McIlvaine, J.
The record before us is exceedingly multifarious. Eifty-five assignments for error are presented. Many of them have been settled by former decisions of this court, and others are quite elementary. There is one question raised, however, of grave importance and of more difficult solution. It is claimed by plaintiff in error that the forged bond shows upon its face that a genuine bond of like import would be wholly invalid and worthless, for the reason that the statute upon which it purports to have been executed was unconstitutional and void; and hence, that the forging of such bond is not a crime within the meaning of the statute defining and punishing forgery. The court below entertained this view of the case, but held that such bond if genuine would have bound the commissioners executing it, personally. This view of the case we have not considered, nor, indeed, whether the instrument, if genuine, would bind . any one, as, upon thorough examination, we are satisfied that there is nothing upon the face of the bond, or in the facts appearing in the record, which show that the bond, if genuine, would not have been a valid and binding obligation according to its terms and manifest purport.
The commissioners of the Biddinger road improvement, named in the forged bond, were appointed by the commissioners of Hamilton county, and were acting under the statute of March 29, 1875 (72 Ohio L. 93), as amended March 28, 1876 (73 Ohio L. 96,) entitled “An act to' authorize the board of county commissioners to lay out and establish free turnpike roads, and to repeal a certain act therein named.” The provisions of the statute, which have been relied on as showing the act to be unconstitutional, are found, chiefly, in sections 8 and 26 of the amendatory act. Section 8 provides “ That for the purpose of constructing free turnpike roads authorized by this act, extra taxes, when levied as hereinbefore provided, shall be on all real and personal property within one mile on each side of said free turnpike road, except when any free turnpike road in process of construction, shall cross a free turnpike road either completed or in process of construction, under and by virtue of any of the road improvement or free turnpike laws of this state, then such lands and personal property as lie within one mile on *42 either side of where such free turnpike roads cross each other, shall be assessed and taxed in proportion to the benefits that may be derived by the owners of such lands and personal property from the construction and use of such free turnpike roads : except, further, that where any road improvement, or free turnpike road built and completed under any of the turnpike laws of this statiS, begins or terminates in the proposed free turnpike, or where any such roads or any toll, unimproved state or county road being unconnected with the same, shall lie, be or run upon either side of said proposed road, within less than' two miles, then the taxes shall only be levied upon such lands and personal property as lie within one half the distance of such roads.” Section 26 authorizes the commissioners of any free turnpike, appointed by the commissioners of the county, to issue bonds in anticipation of the extra tax, as authorized by the act. The first objection suggested to the validity of this statute, relates to the power of the legislature to create a tax district without regard to the boundaries of the municipal or political subdivisions of the state. A sufficient answer to the objection is, that the power exercised is a legislative one, and there is no express or implied limitation upon the power found in the constitution. That the power is not expressly inhibited is clear, and we are persuaded that .there is no implication against it, from- the fact that it has always been exercised without challenge in divers ways for the purpose of promoting local advantages, not only in the exercise of the power of local assessments, where the burden of local improvements has been placed upon property specially benefited, and in proportion to the benefits, but by general taxation upon local districts other than munici: cipal or political subdivisions. Noticeably, special taxing districts have been created for the purpose of supporting and maintaining schools and highways by the subdivision of townships ; and we can see no difference in principle between such legislation and the statute under consideration.
We do not deny that an act of the legislature might assume to place the burden of a local public improvement upon a district so cmcumscribed that the principles of taxation would be so far disregarded, as that it would be the duty of courts to hold *43 it to be an invasion of tbe inviolability of private property. But no consideration of that kind arises under this statute, wbicb imposes a common public burden for a local public improvement.
Again, it is contended that tbe principle of uniformity required by tbe second section of tbe 12th article of tbe constitution is violated. All property witbin tbe taxing district must be taxed by a uniform rule according to its true value in money. Under tbis statute it is plain, that property witbin tbe taxing district and witbin a mile of tbe crossing of another free turnpike road, is not taxable by tbe same rule that applies to other property witbin tbe district.
In Fields v. Comm'rs of Highland County, 36 Ohio St. 476, it was held, that tbe act of March 29,1879 (76 Ohio L. 43), entitled “ an act to authorize tbe commissioners of certain counties to locate and construct turnpike roads ” was unconstitutional for want of uniformity in tbe rule of taxation therein prescribed. Tbe want of uniformity under that statute, and under tbis, is quite similar. But under that act tbe taxing district was co-extensive with tbe county, and it appeared, that tbe only county to wbicb it could apply (Highland) was so situated, with regard to other free turnpike roads, that it was impossible for tbe statute to operate uniformly upon tbe taxpayers of tbe district for any improvement that might be -made under tbe statute. Under tbe statute now being considered, the record does not show whether or not tbe taxes levied for tbe construction of tbe Biddinger road improvement would be uniform upon all tbe real and personal property witbin the taxing district, viz.: Avitbin one mile, on each side, of tbe Biddinger road. Clearly, if the Biddinger road improvement does not cross any other free turnpike road, tbe rule of uniformity required by tbe constitution is not violated. We do not knoAv, and cannot assume that there is such a crossing. Neither would tbe bolder of tbe bonds issued by tbe commissioners of tbe Biddinger road improvement, be put upon inquiry as to tbis fact.
Inasmuch, therefore, as tbe statute under consideration may have a constitutional operation, must it be declared absolutely *44 void, because, under certain circumstances, which may or may not exist, the operation of the statute would violate the principle of uniformity required by the constitution as an essential rule in the imposition of taxes? "We think not. Although courts will never permit the unconstitutional operation of a statute, yet they will not declare it void m toto, if it may have an operation free from any violation of constitutional inhibitions, when such constitutional operation is clearly within the purview of the statute, and no reasonable ground exists for believing that the legislature would not have passed the act without the obnoxious provision.
Judge Cooley, in his work on constitutional limitations (* 178), says, “ Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand, and the last fall. The point is not whether they are contained in the same section, for the distribution into sections is purely artificial, but whether they are essentially and inseparably connected in substance. If, when the unconstitutional part is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected, it must be sustained.” The statute before us is within the rule thus stated.
Much has been said in argument against the validity of this statute, on the assumption that it was intended as an exercise of the power of local assessment; but inasmuch as the burden does not purport to have been apportioned to property benefited, according to benefits, it was not a rightful exercise of such power. We do not think the legislature intended to exercise the power of local assessment according to benefits. Except as to property within a mile of the crossing of free turnpikes, *45 there is no indication that special benefits were either the rule or the limit, of the burden imposed. The intent of the legislature, we think, was to establish special taxing districts for the purpose of defraying the expenses of the construction of free turnpikes therein, and to impose the burden thereof by taxation upon all the property within the district by a uniform rate, according to its true value in money. And in so far as that purpose can be accomplished under the statute, without an infraction of the constitution, we see no objection to its operation.
We find no error in the record for which 'the judgment below should be reversed.

Judgment affirmed.